Morgan v. Insurance Co. of North America.

---

MORGAN *et al. v.* INSURANCE COMPANY OF NORTH AMERICA.

*Insurance of freight.*

Where a vessel sails upon a lawful voyage, but on her arrival at the port of destination, finds the same in the possession of another foreign power, and is prohibited from landing her cargo, the freight is earned; and there can be no recovery against the insurers thereof.

THIS was an action upon a policy of insurance, on the freight of the brig Amazon, valued at $3500, upon a voyage from Philadelphia to Surinam. The policy contained a warranty of American property, and the usual clause against illicit trade.

On the trial of the cause, before the Chief Justice, at *nisi prius*, in July 1806, it appeared that upon the 7th of August 1799, when Surinam was in possession of the Dutch, the vessel sailed on the voyage insured, and arrived at the river of Surinam, on the 17th of September following ; that the brig was detained at the entrance of the river, by the commander of the British fort, who informed the master, that the colony of Surinam had been in possession of the British forces about twenty days ; that the master, and a passenger of the name of J. G. Richter (who was an inhabitant of Surinam, and to whom the cargo was delivered there, on his paying $25,310, in pursuance of a contract with the plaintiffs, Morgan and Price) proceeded to the town of Paramanto, and the cargo was there tendered and agreed to be accepted by Richter, who gave security for paying the stipulated price, as soon as possible after the delivery, in conformity to the contract.   On the 19th of September, the governor of the colony gave permission for the brig to be brought up to town, where she, accordingly, arrived the next day, for the purpose of discharging her cargo ; that on reporting, however, to the custom-house, the collector declared that he would not permit any article to be landed, excepting the provisions (which did not amount to more than one-eighth of the cargo), and that permission to land the cargo generally, was repeatedly solicited by the master, but refused by the governor ; in conse-

Morgan v. Insurance Co. of North America.

quence of which, it was brought back to *Philadelphia. Upon these facts, related in the master's protest,(a) the plaintiffs abandoned, and claimed for a total loss of the freight insured. And it was agreed to state them in a case, for the opinion of the court.

The general question was, whether the plaintiffs were entitled to recover. either for a total, or for a partial, loss of freight? And the solution was considered, by the counsel on both sides, as depending upon the inquiry, whether the freight had been earned, in whole or in part ; and if not, whether the loss was occasioned by a peril enumerated in the policy.

For the *plaintiff.*—By the bill of lading, the master is obliged to deliver the goods (the danger of the seas only excepted), and freight is only payable on the delivery. Beawes Lex Merc. 137; Jud. 179, 183. If a foreign government prevents a landing of the cargo, it prevents an earning of the freight by an arrest, restraint and detainment ; as much, surely, in the decided case, of the foreign government refusing to permit a cargo to be shipped for which the vessel was sent. 3 Bos. & Pul. 295; 8 T. R. 267; 1 Brownl. 21; 7 T. R. 385; Abbot 261; 3 Bac. 610; Lex Merc. 267; Park 292; 3 Rob. 152–3; 7 T. R. 383; 2 Vern. 170; *Perot* v. *Penrose,* in Supreme Court of Pennsylvania. A policy on goods continues in force, until the goods are landed (1 Marsh. 162), and all policies should be liberally construed, for the benefit of trade. (Ibid. 164–5.) In the present case, there is no proof of the delivery of the cargo at Surinam ; but, on the contrary, it appears, that Richter agreed to pay for it as soon as possible after it was delivered ; and as the delivery depended upon the landing, it is virtually disproved by the evidence, that the governor always refused to grant a permit for the landing.

For the *defendant.*—On the evidence, there was an arrival of the vessel at her port of discharge ; and the tender and acceptance of the delivery of the cargo, entitled the owner to his freight. The owner of the ship was not bound to procure a permission to land the goods. Besides, it is not denied, that seamen's wages were paid ; and wages are never payable, but in cases where the freight is earned. But even the loss, if established, was not occasioned by peril insured against. There was no arrest, no restraint, no detainment ; but merely the refusal of a right of entry. Ord. Louis XIV.; 1 Val. 656, art. 15 ; Ib. 626, art. 7 ; Doug. 622, 626–7 ; Poth. 60, § 69 ; 2 Marsh. 434–7 ; 1 Ibid. 162, 164–5 ; Abbot 161 ; 2 Burr. 887.

*457] *The Chief Justice delivered the following opinion, in which BRACKENRIDGE, Justice, concurred :

TILGHMAN, Chief Justice.—This is an action on a policy of insurance on freight of the brig Amazon, from Philadelphia to Surinam, valued at $3500. The brig sailed from Philadelphia on the 7th of August 1799, with a cargo consisting of provisions and merchandise, and arrived in the river Surinam, on the 17th of September following. During the voyage, the colony of

---

(a) When the protest was offered to be read, the defendant's counsel observed, that the circuit court of the United States had refused to admit the protest in evidence, and submitted the competency of such evidence on the present occasion. But by THE COURT.—The practice of Pennsylvania has been long settled : the protest has invariably been received as evidence in the state courts.

Surinam was conquered by the forces of the king of Great Britain. Permission was obtained from the British commander, for the brig to go up to the town of Paramanto, and she arrived there with her cargo, on the 20th September. On her arrival, the master of the brig, in pursuance of instructions from the owners, as well as in pursuance of an agreement between the owners and a certain J. A. Richter, who was a passenger in the said brig, offered to deliver the cargo to the said Richter, upon his paying, or giving security to pay, $25,310. Richter agreed to pay that sum, as soon as possible after the delivery of the cargo, and actually gave good security for the money. But the British collector of the customs, refused permission to land any article of the cargo, except the provisions, nor could such permission be obtained, although repeated petitions were presented to the government. The consequence was, that the cargo was not landed, and the master entered his protest. The brig remained at Paramanto until the 27th of September. The plaintiffs' were owners both of the brig and cargo. The question is, whether the plaintiffs are entitled to recover, either for a total loss, or for a partial loss, on this policy?

The plaintiffs' counsel contend, that they are entitled to recover for a total loss ; that the landing and delivery of the cargo is an essential part of the contract between the owner and freighter, and not being complied with, no part of the freight has been earned ; and that the circumstance of the same persons being owners of the brig and cargo, is immaterial, in a question between the insurers and assured. On the other hand, the defendants' counsel say, that there has been no loss, because the freight was completely earned.

No adjudged case in point has been cited on either side. The defendants' counsel relied on the case of *Blight* v. *Page*, 3 Bos. & Pul. 295 n., but I do not think that case applicable. The owner of a vessel agreed to go to a certain port, and take in a cargo of barley, to be carried on freight. When the vessel arrived at the port, the defendant could not furnish the cargo according to his agreement, because the government refused to permit the exportation of barley. The owner sued the defendant for not complying with his contract, and recovered damages equal to the amount of the freight. This only shows, that the interference of the government did not excuse the defendant from complying *with his contract. The plaintiff had [*458 done everything necessary on his part, and was prevented from earning his freight, by the breach of contract on the part of the defendant. No conclusion can be drawn from this case, under what circumstances freight may be earned, or not earned. For it was not an action for the recovery of freight, but of damages for not being permitted to earn freight.

But although there is no adjudged case, the subject has not escaped the notice of writers on the marine law. In one of the ordinances of Louis XIV. (A. D. 1681), (a) it is declared, that on a charter-party to carry goods out and in, if, during the voyage, the commerce is prohibited and the vessel returns, the outward freight only is earned ; and Valin, in his commentary on this article, says, the law is the same, if the vessel is freighted outward only. These ordinances, and the commentaries on them, have been received with great respect, in the courts both of England and the United States ;

---

(*a*) 1 Vol. Ord. Louis XIV. 656, Art. 15, title Freight, cited by Abbot.

not as containing any authority in themselves, but as evidence of the general marine law. Where they are contradicted by judicial decisions in our own country, they are not to be respected; but on points which have not been decided, they are worthy of great consideration. I am strongly inclined to adopt the rule laid down by Valin, because I think it reasonable. The owner of the ship has been in no fault whatever; when he took the goods on freight, there was an open commerce between Philadelphia and Surinam; the goods were carried to the port of delivery; the vessel waited there seven days, and the master offered to deliver the cargo to the consignee, who refused to receive it. Nothing prevented it but the prohibition of the British government. It is not like the case of a vessel which is prevented from entering the port of delivery, by a blockading squadron; for there the voyage is not performed, and it is impossible to say, certainly, that it would have been safely performed, if there had been no blockade. I think it most agreeable to reason and justice, that the obtaining permission to land the cargo, should, in this case, be considered as the business of the consignee. That being established, it follows, that the freight was earned.

Upon the whole of this case, I am of opinion, that the plaintiffs are not entitled to recover, either for a total or a partial loss.